**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Aubrey B. Willacy, | ) | CASE NO. 1:14 CV 1858 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Thomas P. Marotta, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon Defendants' Motion to Dismiss Count V of
Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Renewed Motion to
Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction Pursuant to Fed. R.
Civ. P. 12(b)(1) (Doc. 12).  This is a breach of contract case.  For the reasons below,
defendants' motion is GRANTED IN PART and the case is STAYED pending arbitration.

**Facts**

Plaintiff, Aubrey B. Willacy, brings this suit against Thomas P. Marotta ("Marotta"),
Timothy A. Marcovy ("Marcovy"), Salvatore J. LoPresti ("LoPresti"), LoPresti, Marcovy &
Marotta, LLP, and Willacy, LoPresti & Marcovy ("WLM").

The following facts are set forth in the Amended Complaint.  Plaintiff and LoPresti

are attorneys.  In 1979, they established a partnership to carry out the practice of law.  The partnership was known as "Willacy & LoPresti."  In pertinent part, the partnership agreement states that:

> The partnership shall be dissolved upon the demand of either of its partners, in which event the partners shall proceed with reasonable promptness to liquidate and terminate the partnership business . . . If the partners are unable to agree upon the method and deatails [sic] of liquidating the partnership business, the controversy shall be settled by arbitration in accordance with the rules of the American Arbitration Association.

(Doc. 3 Ex. A).

In 1984, plaintiff and LoPresti offered Marcovy an opportunity to purchase a fractional interest in the partnership, which he accepted.  As a result, the partnership became WLM.  However, Marcovy failed to pay the required amount of money for his interest after the name of the firm was changed.

From July 2007 until September 2007, plaintiff, LoPresti, Marcovy, and Marotta negotiated the terms of an amendment to the partnership agreement, whereby Marcovy and Marotta purchased a fractional interest in the partnership by buying plaintiff's interest over a ten-year time period.  Plaintiff was also entitled to receive "Additional Compensation" from WLM for any hours worked while in transitional retirement. (Doc. 1 Ex. B).  Plaintiff entered transitional retirement status on January 1, 2008.

On October 26, 2010, the parties agreed to a further amendment to the partnership agreement.   In lieu of paying "Additional Compensation," WLM was to pay plaintiff "an amount equal to one-half of the draw received by the non-retiring partners, to be paid at the same time and in the same manner as such draws are paid to the non-retiring partners."  Amounts in excess of the "Additional Compensation" due to plaintiff which were paid in the half draws were to be credited to the return of plaintiff's capital interest.

2

From October 2010 until November 2013, plaintiff was paid half draws pursuant to the amendment.  After November 2013, Marcovy, Marotta, and LoPresti continued to make draw payments to themselves but did not make any to plaintiff.  When plaintiff inquired about the stoppage, Marcovy advised him that there were insufficient funds and no draw payments could be made to any of the partners.  In May 2014, plaintiff wrote to defendants observing that it was unlikely that they had not received any draw payments for the preceding six months and asked that his draw account be brought current.

In June 2014, Marcovy wrote to plaintiff stating that extreme swings in cash flow necessitated obtaining a line of credit from a bank and that they had been informed that unless all the partners provided a personal guarantee the line would not be forthcoming.  As they did not anticipate plaintiff being willing to offer such a guarantee, they requested a buyout number from plaintiff.  Plaintiff responded with a number, which LoPresti, Marcovy, and Marotta rejected and then countered.

On July 1, 2014, LoPresti, Marcovy, and Marotta emailed a dissolution of partnership to plaintiff for WLM and on the same day filed their "Statement of Domestic Qualification (Limited Liability Partnership)," establishing defendant LoPresti, Marcovy & Marotta, LLP.

Plaintiff thereafter brought this suit.  Count I is a claim for breach of contract for failing to pay plaintiff half draws from November 2013 onward.  Count II is a claim for conversion of the same amount of money.  Count III is a claim for unlawful dissolution of WLM.  Count IV is a claim for failure to calculate a buyout price for plaintiff in good faith following the dissolution of WLM.  Count V is a RICO claim.  Count VI is a claim for breach of fiduciary duty for transferring WLM's assets to LoPresti, Marcovy & Marotta, LLP.  Count

3

VII is a claim for breach of obligations on an account stated.  Count VIII is a claim for a declaratory judgment.

This matter is now before the Court upon defendants' motion to dismiss the Amended Complaint.  After the motion was filed, plaintiff withdrew his RICO claim (Count V). Consequently, defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction because complete diversity is lacking between the parties.  Alternatively, defendants move to stay the case pending arbitration.

### **Discussion**

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id.*  A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.*  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.*  Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.*  In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F. 2d 979, 982 (S.D. Ohio 2000) (*citing Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)).  Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit*

*City Stores, Inc.*, 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999) (*citing Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

The federal diversity statute provides district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 [ ... ] between [ ... ] citizens of different states [ ... ]." 28 U.S.C. § 1332. '[D]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (quoting *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)).

After review, the Court finds that complete diversity is lacking between the parties. Plaintiff, a Florida citizen, has sued WLM, of which he is a partner.  But an unincorporated association has no separate legal identity so its citizenship for diversity purposes is the citizenship of each of its members. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *United Steelworkers of Am. v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889).  Thus, there are Florida citizens—plaintiff and WLM—on both sides of this case.

Relying on *Puerto Rico v. Russell & Co*., 288 U.S. 476 (1933), plaintiff contends that both the Ohio legislature and the Ohio courts have rejected this "aggregate theory" of partnership law and instead treat a partnership like a corporation.  As such, rather than treating WLM as having the citizenship of each of its partners, WLM should, like a corporation, have only the citizenship of its place of business.  The parties would then be diverse.

The Court rejects this argument and finds plaintiff's citation to *Russell* unpersuasive.

5

In *Russell*, the Supreme Court held that an entity created under the civil law of Puerto Rico was a citizen of Puerto Rico for diversity purposes. *Russell*, 288 U.S. at 482.  The Supreme Court reasoned that the entity's juridical "personality is so complete in contemplation of the law of Puerto Rico [there is] no adequate reason for holding that the [entity] has a different status for purposes of federal jurisdiction than a corporation organized under that law." *Id.* However, *Russell* has also been described by the Supreme Court as "the one exception to the admirable consistency" of jurisprudence on the matter of diversity citizenship and was a case resolving the distinctive problem "of fitting an exotic creation of the civil law . . . into a federal scheme which knew it not." *Carden*, 494 U.S. at 189; *United Steelworkers of Am., AFL CIO v. R. H. Bouligny, Inc*., 382 U.S. 145, 151, 86 S. Ct. 272, 275, 15 L. Ed. 2d 217 (U.S. 1965).

In *Carden*, the Supreme Court has firmly rejected inquiry into an entity's internal organization. 494 U.S. at 195.  Instead, they have strictly held that the unincorporated entity is a citizen of the several states of its members and the corporation is a citizen of its state of incorporation and principal place of business.  Changes to this scheme are Congress's to make. *Id.* at 196-97 ("We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.").  Because plaintiff is a partner of WLM, an unincorporated entity, it shares his citizenship.  As plaintiff has named WLM as a defendant, there are Florida citizens on both sides of this suit and complete diversity is lacking. *Accord Hoagland v. Sandberg, Phoenix & Van Gontard, P.C.,* 385 F.3d 737 (7th Cir. 2004) (citing *Carden* and rejecting inquiry into the functional workings of an entity to determine its citizenship because jurisdictional rules ought to be

precise and simple).

Plaintiff asks that WLM be dropped from the suit under Fed. R. Civ. P. 21 to preserve the Court's jurisdiction.

Under Rule 21 of the Federal Rules of Civil Procedure, a court can retain jurisdiction by severing claims against non-diverse dispensable defendants. *DeGidio v. Centocor, Inc.*, 2009 WL 1867676 (N.D.Ohio July 8, 2009) (citing *Newman–Green, Inc. v. Alfonso–Larrain*, 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, even after judgment has been rendered."); *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a non-diverse and dispensable party from litigation in order to achieve diversity."); *Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) ("Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a non-diverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19.")).

Initially, the Court looks to whether the non-diverse defendant is a necessary party by following the two-step process under Fed.R.Civ.P. 19.  First, under Rule 19(a), it is assessed whether the party is necessary for just adjudication.  A party is necessary if: "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *DeGidio*, 2009 WL 1867676, at *3 (N.D. Ohio June 29, 2009) (citing *Safeco Ins*. Co., 36 F.3d at 546;

7

Fed.R.Civ.P. 19(a)).  Second, if the party is determined to be necessary, the Court proceeds to

Rule 19(b) to ascertain whether he is indispensable by considering whether: 1) a judgment

rendered in the party's absence would prejudice the available party; 2) such prejudice could be

lessened or avoided; 3) a judgment rendered in the party's absence would be adequate; and 4)

the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Id.* (citing

*Soberay*, 181 F.3d at 764).

After review, the Court finds that WLM is a dispensable party.  Defendants' sole

argument is that plaintiff must believe WLM to be an indispensable party by naming it in the

Complaint.  The Court disagrees.  The mere averment of wrongdoing does not make a party

indispensable.  If that were so, every defendant would be indispensable.  WLM has not

asserted that "disposing of the action in [its] absence may . . . impair or impede [its] ability to

protect [its] interest" in "the subject of the action." Fed. R. Civ. P. 19(a)(1)(B).  Nor have

defendants Marotta, Marcovy, and LoPresti argued that they would be prejudiced by WLM's

absence.  Consequently, WLM is dropped as a party from the instant case and the Court now

has jurisdiction as the parties are completely diverse.

Defendants, however, contend that the case should be stayed pending the arbitration

that they initiated shortly before plaintiff brought this suit.  After review, the Court agrees.

Plaintiff acknowledges that the partnership agreement contains an agreement to

arbitrate.  However, plaintiff disputes whether all of his claims are within the scope of the

arbitration provision as the agreement pertains only to the liquidation of the partnership.

Defendants respond that plaintiff's claims must nevertheless initially be submitted to

arbitration because the parties incorporated the American Arbitration Association ("AAA")

8

Rules into the partnership agreement, which establishes that the arbitrator determines questions of arbitrability.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added); *Fazio*, 340 F.3d at 392; *Nestle Waters North Am. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[w]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). In fact, a court may not deny a motion to stay or dismiss "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.*" AT & T Technologies, Inc. v. Comms. Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Nestle Waters*, 505 F.3d at 504.  However, "the federal policy in favor of arbitration is not an absolute one." *Id.* (citation omitted).  The Supreme Court has explained that "[w]hile ambiguities . . . should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (citation omitted).

Here, the parties clearly intended for the arbitrator to determine the scope of the arbitration because they incorporated the AAA rules into the arbitration clause.  *Bishop v.*

*Gosiger*, Inc., 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010) (finding contract that requires arbitration prusuant to AAA rules "clearly and unmistakably" vest arbitrator with authority to decide scope of arbitration); *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, 2009 WL 86704 (E.D. La. 2009) (same, citing cases from the First, Second, Eighth, and Eleventh Circuits, as well as two federal district courts in support); *Morsey Constructors, LLC v. Burns and Roe Enterprises, Inc.*, Case No. 5:08–CV–23–R, 2008 WL 3833588 (W.D. Ky. Aug. 13, 2008) ("[A]greeing to settle contract disputes according to the rules of the AAA provides a 'clear and unmistakable' delegation of scope-determining authority to an arbitrator.") (citation omitted).

Defendants incorrectly maintain that this ends the inquiry.  The Court must further determine whether plaintiff's claims fall within the arbitration provision.  The parties' delegation of authority to the arbitrator to define the scope of the arbitration is not unlimited because the arbitration clause specifically covers claims related to WLM's liquidation, not any and every claim between the parties.  In such cases, the arbitrator's authority to decide arbitrability extends only to claims arguably covered by the agreement.  *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011) (finding that even where the arbitrator had been given authority to decide arbitrability, that authority did not extend to claims outside the scope of a narrow arbitration provision).

Nevertheless, after examining plaintiff's claims, and resolving doubts about the scope of arbitrability in favor of arbitration, the Court finds that they are all arguably related to the liquidation of WLM.  Plaintiff contends that his claims for half draws are issues which arose before the dissolution of WLM, and have nothing to do with the liquidation of the partnership.

10

The Court disagrees.  The gravamen of plaintiff's claims is a dispute about what compensation plaintiff is entitled to for his interest in WLM.  Resolution of this dispute is at least arguably related to the "method and details of liquidating the partnership business." (Doc. 1-1 p. 7).  Plaintiff's other claims, including unfair dissolution of WLM and failure to provide a fair buyout price and a statement of partnership assets, arguably state claims related to the liquidation of WLM.  Consequently, the Court leaves the final contract interpretation to the AAA arbitrator.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss is GRANTED IN PART.  WLM is dismissed as a defendant from the case, thereby giving this Court jurisdiction.  However, the case is hereby STAYED pending arbitration.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/22/14

11